UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANNY R. KING,

                      Plaintiff,

    v.                                  **DECISION AND ORDER**
                                      14-CV-829S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

---

1.      Plaintiff Danny R. King challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff was born in 1949, has at least a high school education, and worked as machine operator and tool setter for General Motors.  Plaintiff alleges that he has been disabled since his retirement date, due to a multilevel spinal impairment, left eye blindness, and left shoulder injury.  Plaintiff last met the insured status requirements of the Act on March 31, 2010 (the "date last insured"), making the relevant time period for Plaintiff's application from June 18, 2004, his alleged disability onset date, through the date last insured.  (R. 29). [1]

2.      Plaintiff protectively filed a Title II application for Disability Insurance Benefits (DIB) on July 15, 2011, which was initially denied.  On December 10, 2012, ALJ David S. Lewandowski conducted a hearing at which Plaintiff appeared with counsel.  Plaintiff and a vocational expert testified.  On January 9, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's

---

[1] Citations to the administrative record are designated as "R."

request for review on August 21, 2014.  Plaintiff filed the current action on October 7, 2014, challenging the Commissioner's final decision.[2]

3.      On February 17, 2015, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 6).  On July 10, 2015, the Commissioner filed a Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief. (Docket No. 14).  Plaintiff filed a reply on July 31, 2015 (Docket No. 15), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's January 9, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa

v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this

inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work

experience.   Second, the Commissioner must determine whether jobs exist in the

national economy that a person having the claimant's qualifications could perform.  See

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f);  Heckler v. Campbell, 461 U.S. 458,

460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      With regard to the five-step process set forth above, the ALJ found that:

(1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date

(R. 31); (2) Plaintiff's cervical spine arthritis, left eye vision impairment, and left shoulder

impingement are "severe" impairments within the meaning of the Act, but his lumbar

and thoracic spine conditions were non-severe during the relevant period (id.); (3)

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (R. 31-32); (4) Plaintiff is unable to perform his past relevant work, but has the residual functional capacity ("RFC") to perform light work,[3] except that he is limited to occasional twisting and turning of the spinal column, and, due to limited left eye vision, he has peripheral vision on the right side only and no acute depth perception (R. 32); and (5) Plaintiff can perform jobs that exist in significant numbers in the national economy, including as a fixture maker and inspector general.  (R. 35). Thus, Plaintiff was not under a disability, as defined by the Act, at any time from June 18, 2004 through March 31, 2010.  (R. 36).

10.    Plaintiff alleges disability based on multiple conditions, which developed over a lengthy period of time.  At the time of the ALJ hearing Plaintiff was 63 years old. Plaintiff has been blind in his left eye for many years, as a result of blunt force trauma. (R. 56).  In 2000, he suffered rotator cuff tear and neck injury in a work-related incident, which caused pain and limited range of motion in his left shoulder.  (R. 49).  He also experienced pain in his neck and arthritis in the cervical vertebra.  (R. 31, 49).  On June 18, 2004, Plaintiff retired at age 55 from General Motors, and he testified that he would have worked longer if he did not suffer from physical pain.  (R. 49).  Plaintiff sought physical therapy for lower back pain in 2006 but stated that it did not provide any relief for his pain.  (R. 51).  In 2007, Plaintiff underwent rotator cuff repair surgery, which he said improved his condition but left him with reduced range of motion in his left shoulder and did not help his neck pain.  (R. 50).  Plaintiff attended an independent medical

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

examination in 2008 with Dr. David Steele, who found some functional impairment in Plaintiff's left shoulder range of motion and assessed a 35% loss of use for workers' compensation.  (R. 201).  Most recently, in 2011, Plaintiff sought medical treatment for severe back pain that had been increasing over time.  (R. 52, 221, 226).  Among other serious complaints of pain, he reported being unable to get in and out of bed, having to sleep sitting upright in a chair, and that laying down for an x-ray was excruciatingly painful.  (Id.).  He saw a number of specialist physicians, and the record reflects he suffered from multilevel spinal impairments, including degenerative disc disease (R. 222) and ankylosing spondylitis in his thoracic spine (R. 227).  Plaintiff also filed his DIB application at that time, approximately fifteen months after his insured status expired under the Act.  (R. 29).

11.    Plaintiff first asserts that remand is necessary because the ALJ applied an incorrect legal standard when he denied the claim based on Plaintiff's failure to demonstrate disability prior to the date last insured.  (See R. 33, citing 20 C.F.R. §404.131).  To be eligible for disability benefits under Title II of the Act, a plaintiff must have been insured at the onset of his disability.  See 42 U.S.C. § 423(a)(1)(A), 423(c); Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989).  Moreover, ordinarily, a claimant must apply for disability benefits during the period preceding his date last insured.  See Hartfiel v. Apfel, 192 F. Supp. 2d 41, 42 n.1 (W.D.N.Y. 2001).  "If the applicant does not apply for benefits during this period, [he] may still obtain benefits if [he] has been under a continuous period of disability that began when [he] was eligible to receive benefits." (Id.).  Nonetheless, no matter how disabled a claimant is at the time of his application or hearing, he is only entitled to the benefits of the Act if he is able to prove disability

existed prior to his date last insured.   Arnone, 882 F.2d at 38 ("regardless of the seriousness of his present disability, unless Arnone became disabled before March 31, 1977, he cannot be entitled to benefits").

The Commissioner's Rules require "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability."  SSR 83-20.  The ruling provides:

> "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." (Id.).

Relevant factors an ALJ should consider include "the individual's allegation, the work history, and the medical evidence."  Id.  Conversely, where there is no disability, there is necessarily no onset date.  See id.; see also Temple v. Astrue, 553 F. Supp. 2d 271, 279 (W.D.N.Y. 2008) (finding SSR 83–20 inapplicable where the ALJ's decision that Plaintiff was not disabled at any time was supported by substantial evidence).

Plaintiff urges that the ALJ wrongly treated SSR 83-20 as an optional directive and failed to adhere to its requirements; he asserts the Ruling is a compulsory text triggered by an ambiguous disability onset date.  According to Plaintiff, remand is necessary for the ALJ to consult a medical advisor about the nature of Plaintiff's spine conditions and to determine whether an inference of a disability onset date prior to his date last insured is warranted.  See SSR 83-20.

12.     Here, the ALJ stated that he did "not discount the claimant's complaints of pain, [and] also notes that this Agency's regulations direct that in order to be found

eligible to receive benefits, a claimant must not only be insured but must be insured at the time they became disabled." (R. 33). The ALJ also stated that he "considered SSR 83-20 with regard to the claimant's onset of disability." (Id.). He acknowledged that the Ruling "provides that the undersigned may infer that the onset of disabling impairment(s) occurred some time prior to the date of the first recorded medical evaluation," but that "such an inference must have a legitimate medical basis and be based on the medical evidence." (Id.). The ALJ concluded "[i]n the instant case and for the reasons outlined below, even after full consideration of [Plaintiff]'s medical records and testimony, there is no legitimate medical basis upon which to infer disability prior to [Plaintiff]'s date last insured of March 31, 2010." (Id.). The Court agrees. The ALJ did not explicitly state whether he found Plaintiff to be disabled in 2011. For the purpose of this disability insurance benefits application, however, Plaintiff had the burden of proving that he was disabled prior to March 31, 2010, the date his insured status expired. Wagner, 906 F.2d at 860 ("entitlement will not arise unless a claimant meets the insured-status criteria of 42 U.S.C. § 423(c)")). Substantial evidence supports a finding that he was not.

13.     Contrary to Plaintiff's contention, the ALJ considered Plaintiff's testimony and work history. The ALJ cited Plaintiff's testimony that "he has had back pain since 2004, and that this pain eventually caused him to retire." (R. 33, citing R. 55). The ALJ also considered that Plaintiff "was unable to specify exactly when his back pain began and stated he did not know he had a back problem until it was diagnosed in June 2011." (Id.). While Plaintiff alleges he retired because of his pain, portions of his own testimony on the issue are vague. For example, although Plaintiff testified that he retired because

of his back pain, he went on to say that "I had accumulated enough time to where I could retire, and I just got tired of going in and working with the pain all the time, so I made the decision to retire at an early age." (R. 49).

The ALJ also considered Plaintiff's statements to his treatment providers. The ALJ noted that Plaintiff reported to pain specialist, Dr. Jaffir Siddiqui, "that his back pain had been slowly progressing over two years." (R. 34, citing R. 221). The ALJ concluded that there were "no significant findings at this examination or prior to his date last insured contained in the record that would support a finding that such pain rose to a level that would impose any additional or greater limitations than those outlined" in the RFC. (R. 34). Furthermore, regarding spine surgeon Dr. Franco Vigna's June 1, 2011 treatment note, the ALJ noted at that initial consultation, Plaintiff "reported he has had back pain for years but that it had been increasing over the past couple of months." (R. 34, citing R. 226).

14. Plaintiff further argues that the ALJ treated Plaintiff's lumbar and thoracic spine conditions as arising on the date they were first recorded in the medical records, which undermines the purpose of SSR 83-20. The Ruling explicitly states: "[i]n some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." SSR 83-20; see Falconi v. Astrue, No. 2:12-CV-37, 2012 WL 5381833, at *4 (D. Vt. Nov. 1, 2012) ("the ALJ's singular focus on the lack of medical evidence from the insured period does not comply with the purpose of the Ruling"). Nevertheless, the Ruling also states that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment

was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death."  Id.

At Step 2, the ALJ concluded that "there is no evidence prior to the claimant's date last insured that would support a finding that either of these impairments imposed more than minimal effect on the claimant's ability to work."  (R. 31).  Therefore, the ALJ deemed these conditions nonsevere.  (Id.).  In addition, as noted above, the ALJ acknowledged that the record contains evidence of spinal conditions, but not until after Plaintiff was no longer insured.  (R. 33).  The ALJ further noted that the record "lacks any indication of diagnoses of the [Plaintiff]'s lumbar or thoracic impairments, any treatment received, whether he had any temporary aggravations, long-term problems or any other findings that would support a finding of disability with regard to his spine."  (R. 33).  With regard to positive diagnostic MRI findings that could reasonably support a severity or disability finding, the ALJ noted that "these MRIs were performed in 2011, after the expiration of [Plaintiff]'s insured status."  (R. 34).  Additionally, Plaintiff sought physical therapy for low back pain as early as 2006, but there is no indication that his back pain was "severe" at that time.  (R. 191).  The physical therapist stated that Plaintiff's "overall rehabilitation potential is good" and proposed a four week rehabilitation plan to reduce Plaintiff's pain and increase his range of motion.  (R. 194-195).  Although Plaintiff argues that he received no relief from physical therapy, the record reflects that he did not seek other medical treatment for his back problems until 2011.  (R. 51, 52).

It is apparent from the record and description of Plaintiff's diagnoses that his multilevel spinal impairments did not simply arise out of nowhere.  That the ALJ relied

on the available medical evidence, however, does not indicate that he assumed those conditions simply appeared in 2011. Rather, minimal treatment records for Plaintiff's back conditions from the time Plaintiff retired in 2004 until 2011, along with a marked increase in seeking treatment, is consistent with Plaintiff's progressive conditions and permits the reasonable inference that his symptoms increased at that time. See O'Connell v. Astrue, No. 11-CV-1099S, 2013 WL 1337282, at *6 (W.D.N.Y. Mar. 29, 2013) aff'd sub nom. O'Connell v. Colvin, 558 F. App'x 63 (2d Cir. 2014) ("the fact that Plaintiff began seeing a neurologist [] in 2011 is consistent with Plaintiff's admitted progressive symptoms"); see also Reynolds v. Colvin, 570 F. App'x 45, 49 (2d Cir. 2014) (finding ALJ's decision not to credit claimant's allegations of debilitating neck and back pain between 2001 and 2006 was supported by "her failure to complain of, manifest, or seek treatment for such intense pain before 2010").

Although Plaintiff's spine conditions likely began developing before 2011, the inquiry is not whether Plaintiff had these conditions prior to his date last insured, rather at what time does the record indicate they became disabling. Flanigan v. Colvin, 21 F. Supp. 3d 285, 302 (S.D.N.Y. 2014) ("Contrary to establishing the existence of a severe impairment before December 31, 2008, at best the evidence shows that Flanigan experienced progressively worsening symptoms that eventually became disabling sometime in 2009 at the earliest."). Here, there is no legitimate medical basis to infer an onset of disability from Plaintiff's spine conditions until some time close to when he began seeking medical treatment for his back pain in 2011. See Cataneo v. Astrue, No. 11-CV-2671 KAM, 2013 WL 1122626, at *20 (E.D.N.Y. Mar. 17, 2013) ("[i]t is a natural inference that someone with an extremely painful physical impairment would not abstain

from clinical treatment"). Although Plaintiff's disability claim is not "*necessarily precluded*" by "the dearth of contemporaneous evidence," the Second Circuit has recognized that "failure to present any medical evidence from that period seriously undermines his contention that he was continuously disabled during that time." Arnone, 882 F.2d at 39; Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008) (finding "ALJ appropriately relied on the near absence of any medical records [during the relevant period] to find that Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition"). The claimant bears the burden of proving that the "post-coverage period medical evidence suggests that [his] disability existed prior to the expiration of coverage." Ratliff v. Barnhart, 92 F. App'x 838, 840 n.2 (2d Cir. 2004), citing Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000). Here, Plaintiff has not met that burden. The medical evidence suggests that Plaintiff currently suffers from severe or disabling impairments. However, the evidence also suggests that the onset of any disability occurred at least one year after Plaintiff's insured status expired. Accordingly, the ALJ was not compelled to call on the services of a medical advisor because the facts of this case do not dictate that "onset must be inferred." See SSR 83-20.

15.      Plaintiff next argues that the RFC is flawed because the ALJ erroneously failed to address the August, 26, 2008 opinion of Dr. David Steele, an independent medical examiner, and should have consulted with a medical advisor regarding Plaintiff's exertional capabilities. Although the ALJ found Plaintiff's left shoulder impingement to be a severe impairment at Step Two, he did not incorporate any shoulder-related limitations into the RFC. (See R. 32). Plaintiff asserts that the ALJ

simply neglected to mention Dr. Steele's opinion that Plaintiff had a 35% loss of use for his left arm and, accordingly, failed to weigh that opinion pursuant to the Regulations. (See R. 200-202); 20 C.F.R. § 404.1527(c) (ALJ is required to consider all medical opinions and to explain the reasons for assigning certain weight to examining sources). Furthermore, Plaintiff argues that the ALJ fashioned the RFC using his own lay judgment, provided no explanation for his conclusion that Plaintiff could perform light work, and failed to consult with any medical advisor.   The Court finds no reversible error.

The ALJ noted that Plaintiff suffered a rotator cuff tear in 2000, "and that while this affected him he continued to work [until 2004] and was able to wait until 2007 to have surgery."  (R. 33).   The ALJ considered Plaintiff's testimony that although the shoulder surgery did not provide him total relief, it did improve his condition.  (R. 33; 50). Indeed, Plaintiff testified that he is able to reach above shoulder level and that currently his back pain, not his shoulder limitations, interfere with his ability to reach.  (R. 56). Additionally, he testified that moving his shoulder joint caused "not that much" pain.  (R. 57).

Moreover, the ALJ recounted Dr. Steele's findings, including his assessment of left shoulder impingement with left acromioclavicular arthritis, reduced forward flexion of the left shoulder, but normal movement in several directions.  (R. 33, 200).  The ALJ also noted that Dr. Steele reviewed reports of Plaintiff's 2004 x-rays and 2001 MRIs, which demonstrated mild arthritis and small disc protrusions in the cervical vertebra.  (R. 33-34; 200).   The ALJ did not specifically address Dr. Steele's 35% loss of use assessment; however, that opinion was issued in the context of Plaintiff's workers'

compensation claim for his shoulder injury.  (R. 201).  Workers' compensation opinions are "directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act." Gray v. Chater, 903 F.Supp. 293, 301 n. 8 (N.D.N.Y. 1995).  The ALJ's finding that Plaintiff could not perform his past relevant work is consistent with this.

Plaintiff alleges the ALJ's incomplete analysis of Dr. Steele's opinion specifically harmed Plaintiff with regard to the finding that he could work as a "fixture maker."  (See R. 35).  The VE testified that work as a fixture maker requires "frequent use of the upper extremities."  (R. 63).  Plaintiff asserts, as the VE testified, if he had only "occasional use" of his non-dominant upper extremity it would preclude such work.  (Id.).  Thus, had the ALJ credited Dr. Steele's opinion, there is a reasonable possibility that this job would be eliminated as a possibility.  Dr. Steele's opinion does not contain any specific functional limitations, but the Court finds Plaintiff's testimony discussed above supports the ALJ's finding that his ability to reach was not so limited by his shoulder condition.

16.    Plaintiff also asserts that the ALJ's RFC "appears to be picked out of thin air," is not well-explained, and was not determined with any medical opinion regarding Plaintiff's functional capacity prior to his date last insured.  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  Stanton v. Astrue, No. 07–CV–803, 2009 U.S. Dist. LEXIS 130826, 2009 WL 1940539, *9 (N.D.N.Y. June 4, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), aff'd, 370 Fed. App'x. 231 (2d Cir. 2010).  In some cases "[a] treating physician's retrospective medical assessment of a patient may be probative when based upon

clinically acceptable diagnostic techniques." Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). In this case, none of Plaintiff's current treating physicians treated him prior to or during the relevant period. Thus, any retrospective medical opinion would be based on speculation and Plaintiff's own vague recollections. See Perez, 77 F.3d at 48 (declining to require ALJ to seek additional information from treating physicians where what would be sought were retrospective assessments); Flanigan, 21 F.Supp.3d at 304 ("[E]ven assuming arguendo that there was evidentiary support for Dr. Kovoor's retrospective onset statements—i.e. that Flanigan's 'complaints have been present since Nov 2008'... those statements substantiate only that the conditions or symptoms existed in 2008, but not necessarily that they were as severe and disabling in 2008 as they had become by the time Dr. Kovoor prepared the February 2012 letter .").

In assessing a claimant's alleged disability, the ALJ must develop the claimant's medical history for at least a twelve-month period prior to his application date. 42 U.S.C. § 423(d)(5)(B), 20 C.F.R. §§ 404.1512(d). This duty to develop the record, together with the treating physician rule, produces an obligation that encompasses the duty to obtain information from physicians who can provide opinions about the claimant. Jackson v. Colvin, No. 13-CV-5655 AJN SN, 2014 WL 4695080, at *17 (S.D.N.Y. Sept. 3, 2014). Under certain circumstances, including where opportunities to develop the record are limited, the ALJ need not seek additional medical opinions. See Lewis v. Colvin, No. 13-CV-1072S, 2014 WL 6609637, at *5 (W.D.N.Y. Nov. 20, 2014) (finding limited opportunities for record development where claimant saw no physician more than once and failed to appear for a consultative examination). Here, the Court finds "the ALJ did not err when he did not pursue something that could not reasonably be

obtained—i.e., an opinion from a physician or other treating source whose relationship with Plaintiff was such that the opinion, if supported by the record evidence, would be entitled to controlling weight." <u>Id.</u>  Plaintiff began seeking treatment for his spinal conditions after his insured status expired.  Although the record suggests he established treating relationships with several physicians around the time of his application, none of them opined to his past functional abilities.  Moreover, the ALJ would not have been compelled to give any retrospective opinions controlling weight, as they would have been based on Plaintiff's own vague recollections and unsupported by earlier medical evidence.  <u>See</u> <u>Lesterhuis v. Colvin</u>, 53 F. Supp. 3d 596, 606-07 (W.D.N.Y. 2014) ("[I]f the physician treated the claimant after the retrospective time period, and the contemporaneous medical evidence does not support or even contradicts the physician's opinion, then that physician's opinion may not be probative.").

17.    Undeniably, the record demonstrates that Plaintiff has serious back conditions that now cause him significant pain and limitations.  Nevertheless, the ALJ reasonably arrived at his conclusion that the medical evidence in the record does not support a finding that Plaintiff's severe or nonsevere conditions became disabling prior to the date last insured.  Furthermore, Plaintiff does not argue that any specific, but unconsidered, evidence exists to support a disability finding.  A speculative retrospective analysis by a medical advisor based on the existence of diagnosable conditions would offer little in the way of probative evidence to support Plaintiff's contentions.

18.    After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision, including the objective medical

evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff was not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's motion for judgment on the pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  March 23, 2016
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge